UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

                              Case No. 8:19-cr-544-TPB-TGW

vs.

LUIS SALAZAR

## **DEFENDANT LUIS SALAZAR'S SENTENCING MEMORANDUM AND MOTION FOR VARIANCE AND DEPARTURE FROM SENTENCING GUIDELINES**

    Defendant Luis Salazar stands before this Honorable Court for sentencing after pleading guilty to one count of conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine while aboard a vessel operating within the jurisdiction of the United States in violation of 46 U.S.C §§ 70503(a), 70506(a) and (b) and 21 U.S.C 960(b)(1)(b)(ii). As the Courts have gradually shifted away from the mandatory nature of Federal Sentencing Guidelines, district courts are now empowered consider all aspects of a crime, all qualities of the defendant, and all possible punishments when fashioning a sentence. For the reasons argued herein, Mr. Salazar and counsel submit that a departure and variance from the proposed guidelines is warranted and that a sentence below the advisory guideline range would be sufficient, but not greater than necessary to achieve the sentencing objectives enumerated in 18 U.S.C § 3553(a).

# I. INTRODUCTION

Apart from his conduct in this case, Luis Salazar has spent the past 55 years of his life as a law-abiding fisherman from the city of Sucre, Venezuela. (*See* Presentence Investigation Report Page 10, ¶¶ 48 [hereinafter PSR]). He has worked in this capacity since ten years old as he did not do well in school and needed to supplement income for is single mother to support the rest of the family. (PSR ¶¶ 60, 63).

Mr. Salazar understands the seriousness of his offense and respects that he must be punished for his actions. However, given his cooperation with the government and the minimal role he played in the smuggling operation, he respectfully requests that this court consider the following relevant 18 U.S.C § 3553(a) factors and impose a sentence below the advisory guideline range. Further, as the PSR does not consider Mr. Salazar's minimal role when it recommends 108 to 135 months in prison, he respectfully asks this court to consider a minimal role reduction. Mr. Salazar was a mariner on a 14-person vessel. He was neither the captain, skipper nor apprised of the detailed of the date, time, weight and location where the contraband shipment would be. He only was aware that it was coming at some point during the expedition.

Finally, as the court will learn from Mr. Salazar's story, he is an older gentleman who had no contact with law enforcement prior to this incident nor did he participate in any other ventures. He was self-sufficient and self-employed with his own boat to do able to provide for his family. Mr. Salazar applied for loans to fix his motors which subsequently broke again, and he no longer had the means to repay the loan nor fix the motors. Mr. Salazar was stuck with crushing debt he could not repay which at 55 years old made him contemplate this voyage at all. Having not had a formal education for most of his life, Mr. Salazar is limited in his ability to read and write in his native language and speaks no English at all. (PSR ¶ 60). Mr. Salazar is interested in returning to Venezuela to spend the remaining years of his life with his wife and watching his grandchildren

grow up. (PSR ¶ 52-53). A sentence that allows him to do so is both warranted and justified. Thus, Mr. Salazar asks this Court to sentence him to the lowest permissible term of incarceration with the ability to participate in UNICOR to learn auto mechanics or any other vocational training provided. (PSR ¶ 61).

## II.   HISTORY AND CHARACTERISTICS OF MR. SALAZAR

Mr. Salazar is a 55-year-old Venezuelan National. Despite enduring unstable circumstances growing up, he has strived live a positive and productive life in support of his family prior to this incident.

*Childhood and Young Adult Life*

Mr. Salazar was born November 7, 1965, in Sucre, Venezuela. His father, Juan Jose Mata, who was a fisherman but not a part of his youth and Elsa Salazar, whom was a wonderful mother who persevered in providing was she could for her 4 minor children. (PSR ¶ 50).Raised by his mother in limited resources, Mr. Salazar was unable to continue schooling due to his inability to learn at the same pace of his classmates and lack of funds to pay for additional classes and tutors. Mr. Salazar at the age of ten began his life in the workforce to help provide income for his family. (PSR ¶ 60). Mr. Salazar undoubtedly had a troubled childhood, which is another factor district courts have taken into consideration for sentencing purposes and the basis on which they have granted downward departures from sentencing guidelines. United States v. Ruiz, No. 06CR543(PKC), 2009 WL 636543 (S.D.N.Y. Mar. 11, 2009, at 1 (noting that the defendant's "difficult childhood" was a factor that the courts considered in granted a sentence below the sentencing guidelines).

*A. Family*

Mr. Salazar is fortunate to still have the love and support of his wife Marilu Gutierrez back

home. Ms. Gutierrez was a homemaker prior to Mr. Salazar's incarceration, as he provided financial support for her and their now adult children. Ms. Gutierrez does not have the means to repay the loans Mr. Salazar took out on the motors and fears that she does not have the skills or ability to pay without the financial support of her husband.

Mr. Salazar has five siblings, whom he maintains a good relationship with. Mr. Salazar plans to return to Venezuela to continue supporting his wife. (PSR ¶ 51).

*A. Employment and Health*

Mr. Salazar has spent 45 of his 55 years employed as a fisherman. With an income that varied month to month, his financial situation was often unstable. (PSR ¶ 63). Mr. Salazar took employment on larger fishing vessels for multi-day expeditions when they were available to be able to provide income to his family.

vi. **THE NATURE AND CIRCUMSTANCES OF THE OFFENSE WARRANT VARIANCE**

A sentencing court must "impose a sentence sufficient, but not greater than necessary,' 18 U.S.C § 3553(a), to achieve the overarching sentencing purposes of 'retribution, deterrence, incapacitation, and rehabilitation.'" Rosales-Mireles v. United States, 138 S. Ct. 1897, 1903 (2018) (quoting Tapia v. United States, 564 U.S. 319 325 (2011); accord 18 U.S.C § 3553(a)(2).

Additionally, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, and sometimes magnify, the crime and the punishment . . ." Pepper v. United States, 562 U.S. 476, 487 (2011) (quoting Koon v. United States, 518 U.S. 81. 113(1996)).

Mr. Salazar's poor financial situation, the need to provide food for his children, and his responsibility to purchase medication for his mother led to a lapse in judgment and participation in this offense. (PSR ¶ 63). Although he wanted to help his mother and contribute financially to his household, Mr. Salazar is devastated by the thought that his offense has put his family in a worse position. He does not dispute his guilt or the seriousness of his offense, but the factors contained in 18 U.S.C § 3553(a)(2) do not warrant a substantial period of imprisonment in this case.

Mr. Salazar has demonstrated respect for our legal system throughout this process despite his lack of familiarity with our processes or any allegiance to this country. He entered a timely guilty plea (PSR ¶ 26), has clearly demonstrated acceptance of responsibility for the offense (PSR ¶ 36), assisted authorities in the prosecution of his own misconduct (PSR. ¶37), and was cooperative during his interview by the United States Probation Officer (PSR. ¶ 27). See 18 U.S.C § 3553(a)(2)(A).

A just punishment should also consider less traditional elements of his punishment such as: he will be incarcerated in a foreign country where he does not know anyone, he does not speaka word of English, and his family will be unable to visit him. Given the psychological and emotional challenges he will have to overcome in such a short period of time, any period of incarceration will adequately deter him from any criminal conduct in the future. Mr. Salazar has already felt the consequences of his actions as he has been unable to be the provider his family hasalways depended on. *See* 18 U.S.C 3553(a)(2)(B).

Mr. Salazar's responsibility to his family back home, his age, distinguish him from others convicted of the same offenses for sentencing purposes because they reduce his likelihood of reoffending and shorten his life expectancy. Thus, the need to protect the public from further

crimes committed by Mr. Salazar is low. *See* 18 U.S.C. § 3553(a)(2)(C).

Mr. Salazar would benefit from educational or vocational training, medical care, or other correctional treatment in prison. However, his status as an undocumented immigrant will likely prevent him from participating. Mr. Salazar would like to receive vocational training and learn about auto mechanical engineering while incarcerated. (PSR ¶ 62).

This Court should exercise its broad discretion and impose a less stringent sentence than the one suggested by the Guidelines in this case, especially since Mr. Salazar timely pled guilty, accepted responsibility for his actions, and will likely be deported upon completion of his sentence and prohibited from re-entering the United States. Incarceration, in accordance with the advisory sentence under the sentencing guidelines, would consume most, if not all, of Mr. Salazar's productive years as a source of financial support for his family.

    vii.    **MR. SALAZAR'S ROLE WARRANTS A DOWNWARD DEPARTURE**

Section 3B1.2 of the Guidelines provides an adjustment of two, three, or four levels for a defendant who plays a role "substantially less culpable than the average participant in the criminal activity." United States Sentencing Commission, *Guidelines Manual*, § 3B1.2, comment. (n.3(A)) (Nov. 2018). This Section was amended in 2015 after the Commission conducted a study, which "found that mitigating role is applied inconsistently and more sparingly than the Commission intended." USSG App. C, amendment 794. Specifically, the Commission "revise[d] the commentary to emphasize that 'the fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative' and that such a defendant may receive a mitigatingrole adjustment, if he or she is otherwise eligible." USSG App. C, amendment 794 (quoting USSG § 3B1.2, comment (n.3(C)).

According to this section, a sentencing court must "consider the totality of the circumstances, USSG § 3B1.2, comment (n.3(C)). assessing 'first, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and second, [his] role as compared to that of other participants in [his] relevant conduct.'" *United States v. Colorado*, 716 Fed. Appx. 922, 924 (11th Cr. 2017) (per curiam) (quoting *United States v. Rodriguez De Varon*, 175 F.3d 930,939 (11th Cir. 1999) (en banc)). The Commentary to USSG § 3B1.2 provides a non-exhaustive list of factors to consider in this fact-intensive inquiry, which includes:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

USSG § 3B1.2 comment. (n.3(C)).

Mr. Salazar's participation in the offense should be characterized as minimal given his limited knowledge and control over the offense. *Contra United States v. Moreno*, 199 Fed. Appx. 839, 842 (11th CIR. 2006) (describing the defendant as "a knowing and willing participant in a drug smuggling venture"). The probation office came to the conclusion that Mr. Salazar's limited education and resources made him susceptible to recruitment into this operation. (PSR ¶ 77).

Mr. Salazar was forthright and admitted that he knew about the smuggling operation, but he never actually handled the cocaine. (PSR¶ 27). Additionally, Mr. Salazar was not advised on the inner working of the scheduled drop off time/amount that was shared with other co-defendants. (PSR ¶ 27).

There is no evidence that Mr. Salazar had any ownership interest in the drugs, any decision-making authority, or played any role beyond portraying his normal role as a fisherman. (*See* R & R.2, ECF No. 180.): *see also* USSG § 3B1.2 comment. (n.3(C)) ("[A] defendant who does not have a proprietary interest in the criminal activity should be considered for an adjustment under this guideline."). As an experienced lifelong fisherman, it likely that Mr. Salazar was recruited in the operation to pose as a fisherman, and his only responsibility was to diminish the suspicion of authorities.

Even if his role cannot be described as minimal, Mr. Salazar's role should at least qualify as minor or somewhere in between. *See* USSG § 3B1.2 ("In cases falling between (a) and (b), decrease by 3 levels."). A minor participant is someone "who is less culpable than most other participants in the criminal activity." USSG § 3B1.2 comment. (n.5) Having determined that Mr. Salazar's limited education and resources made him more susceptible to recruitment into this operation, the probation office agrees that he was less culpable than the mariner's that handled and jettisoned the stash, as well as those who had a proprietary interest in the distribution of the illicit substance.

Had the Presentence Investigation Report properly incorporated a mitigating role adjustment, Mr. Salazar's Base Offense Level would be reduced significantly pursuant to USSG § 2D1.1(a)(5). Essentially, since his base level offense is 36, an additional 3 levels.

v. **THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES**

Mr. Salazar should not receive a sentence unjustifiably disparate from sentences imposed in other Maritime Drug Law Enforcement cases. In determining a sentence, 18 U.S.C. §3553(a)(6) instructs that the sentencing court shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similarconduct."

## VII. CONCLUSION

For the reasons stated above, Mr. Salazar respectfully requests that the Court grant Mr. Salazar a downward departure for his role in the offense. He respectfully suggests that a departure and variance below the guideline range would be sufficient but not greater than necessary to achieve the sentencing objectives of 18 U.S.C. § 3553(a).

Respectfully submitted,

By: /s/ Cynthia J. Hernandez, Esq.
Cynthia J. Hernandez, Esq.
Florida Bar No. 010422
506 N. Armenia Ave.
Tampa, FL 33609
Tel. (813) 841-2933
Fax (813) 864-6735
E-mail: cynthia@cynthiahernandezlaw.com
Attorney for Defendant

## CERTIFICATE OF SERVICE

**I HEREBY CERIFY** that on July 20, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

AUSA JOSEPH RUDDY

/S/ Cynthia J. Hernandez

Cynthia J. Hernandez, Esquire